THE PEOPLE OF THE STATE OF NEW YORK ex rel. HENRY
   HIRSCHBERG, Appellant, *v.* THE BOARD OF SUPER-
   VISORS OF THE COUNTY OF ORANGE, Respondent.

(Argued April 15, 1929; decided May 28, 1929.)

*Henry Hirschberg,* appellant in person. Neither the decision of Commissioner Lee nor the Governor on the trial of the charges against the District Attorney were *res adjudicata* preventing relator on the audit of his claim producing evidence to establish the truth of such charges on the issues of probable cause and good faith

and the Board committed reversible error in ruling that such decisions were *res adjudicata* preventing relator producing such evidence. (*Reiss* v. *Levy*, 165 App. Div. 1; *Diad* v. *Shibley*, 49 Misc. Rep. 315; *Palmer* v. *Palmer*, 8 App. Div. 331; *Vanderbilt* v. *Mathis*, 5 Duer, 304; *Scott* v. *Simpson*, 1 Sandf. 601; *Brownstein* v. *Sahlein*, 65 Hun, 365; *Young* v. *Lyall*, 25 J. & S. 39; *Stewart* v. *Sonneborn*, 98 U. S. 187; *Lewis* v. *Goldman*, 136 N. E. Rep. 67; *Burlingame* v. *Burlingame*, 8 Cow. 141.) It was reversible error to refuse to permit relator to introduce testimony of grand jurors and other witnesses in rebuttal of evidence received. (*Matter of Osborn*, 62 Misc. Rep. 575; *Atty.-Gen.* v. *Tufts*, 239 Mass. 458; *Atty.-Gen.* v. *Pelletier*, 240 Mass. 264.) The reasonable costs and expenses including counsel fees incurred in prosecuting charges against a District Attorney, pursuant to the method directed in this case by the Governor, are legal county charges by virtue of subdivision 16 of section 240 of the County Law. (*People ex rel. Hirschberg* v. *Supervisors*, 192 App. Div. 914; *People ex rel. Benedict* v. *Supervisors*, 24 Hun, 413; *People ex rel. Benner* v. *Supervisors*, 39 Hun, 442; *People ex rel. Smart* v. *Supervisors*, 66 App. Div. 66; *People ex rel. Nash* v. *Supervisors*, 164 App. Div. 89; *People ex rel. Gagan* v. *Purdy*, 173 App. Div. 350; *Garvin* v. *Supervisors*, 221 N. Y. 222; *Matter of Kane* v. *McClellan*, 110 App. Div. 44; *Matter of Duel* v. *Gaynor*, 141 App. Div. 630.) Relator has the right to a judicial trial of his claim against Orange county and at such trial to present any legal evidence in support of the claim and to cross-examine the witnesses against him. He is entitled to a hearing in accordance with due process of law. The most extensive permission heretofore given Boards of Audit by the courts to violate the law of evidence, has not permitted such Boards to deny a claimant the right of producing evidence or cross-examining the witnesses against him. (*Bliss* v. *Supervisors*, 39 N. Y. S. R. 313.) There is not one scintilla of legal evidence before

this court upon which the finding that relator did not have probable cause for the charges against this District Attorney can be based. The evidence in this record establishes probable cause as · matter of law. (*Rawson* v. *Leggett,* 184 N. Y. 504; *Williard* v. *Holmes, Booth & Haydens,* 142 N. Y. 492; *Galley* v. *Brennan,* 156 App. Div. 443; *Davenport* v. *N. Y. C. & H. R. R. R. Co.,* 149 App. Div. 432; *Kutner* v. *Fargo,* 34 App. Div. 317; *Burt* v. *Smith,* 181 N. Y. 1; *McCarthy* v. *Barrett,* 144 App. Div. 727; *Frances* v. *Tilyou,* 26 App. Div. 340; *Giesner* v. *Healy,* 86 Misc. Rep. 16.) Probable cause existing as matter of law, no malice or bad faith upon relator's part, granting for argument's sake such malice or bad faith existed in making the charges to the Governor, can be considered. (*People ex rel. Nash* v. *Supervisors,* 164 App. Div. 89; *Conner* v. *Wetmore,* 110 App. Div. 440; *Besson* v. *Southard,* 10 N. Y. 236; *Bankell* v. *Weinarch,* 99 App. Div. 316; *Thompson* v. *Lumley,* 1 Abb. [N. C.] 254; 64 N. Y. 631; *Jennings* v. *Davidson,* 13 Hun, 393; *Muller* v. *Mulligan,* 48 Barb. 30; *Tower* v. *Dunnegan,* 30 Hun, 465; *Hill* v. *Suydam,* 6 Barb. 83; *Murray* v. *Long,* 1 Wend. 140; *Atty.-Gen.* v. *Pelletier,* 240 Mass. 264; *Atty.-Gen.* v. *Tufts,* 239 Mass. 458.)

*Percy V. D. Gott* and *Joseph W. Gott* for respondent. The Board of Supervisors, acting as a Board of Audit, was not bound by strict common-law rules of evidence. Its determination should not be reversed for error in the exclusion or admission of evidence, if there was sufficient competent evidence to sustain the determination. (*Matter of White* v. *Supervisors,* 20 N. Y. 273; *Matter of Cochran* v. *Town Auditors,* 74 Hun, 83; *Matter of Oppenheimer* v. *Colwell,* 81 Hun, 383; *Matter of Morey* v. *Town Board,* 80 App. Div. 280; *Matter of Sutliff* v. *Supervisors,* 74 Hun, 251; *Matter of Burby* v. *Common Council,* 85 Hun, 601; *Matter of O'Shea* v. *Lantry,* 44 App. Div. 392; *Matter of McHenry,* 140 App. Div. 761; *Matter of Delaware*

v. *State*, 184 App. Div. 691; *Matter of Folk* v. *Board*, 69 N. Y. 408; *Matter of Clark* v. *Roosevelt*, 168 N. Y. 488; *Matter of Greenbaum* v. *Bingham*, 201 N. Y. 343.)

LEHMAN, J. In April, 1919, the relator preferred charges of serious derelictions against Jonathan D. Wilson, District Attorney of Orange county, and applied to the Governor of the State for his removal. The Governor appointed a commissioner to examine witnesses and take evidence as to the truth of the charges, and to report the evidence and his findings and conclusions. After a hearing the commissioner rendered his report to the Governor in which he stated: " I recommend and report that the charges have not been sustained and that said charges should be dismissed." Thereupon the Governor entered a formal order dismissing the charges.

It is provided by section 240 of the County Law (Cons. Laws, ch. 11) that " The reasonable costs and expenses in proceedings before the governor for the removal of any county officer upon charges preferred against him " are county charges. The relator presented to the Board of Supervisors of the county a claim for his costs and expenses. The Supervisors refused to audit the claim. Upon the application of the relator, an order of mandamus was made at Special Term, directing the Board of Supervisors to audit the claim on the merits. The Appellate Division modified the order by striking out the words " on the merits." Then the Board of Supervisors through a committee heard the relator in support of his claim and after the hearing rejected it.

The determination of the Board of Supervisors has been brought before the courts for review by certiorari proceedings. Concededly, upon the hearing, the rulings in regard to the admission and exclusion of evidence did not conform to the technical rules which ordinarily control judicial officers. The courts have never held that these rules must be strictly applied also by administrative

boards when they exercise quasi-judicial functions. (*People ex rel. Cochran v. Town Auditors*, 74 Hun, 83; *People ex rel. Sutliff v. Supervisors*, 74 Hun, 251.) Decision is intrusted to men who cannot be presumed to be learned in technical rules of law; common sense dictates the conclusion that they may not be required to apply rules which lie beyond what they may be presumed to know. Their decisions must, of course, be based upon a consideration of the relevant facts and a fair opportunity must be afforded to present to them such facts as should properly enter into their decisions. Even where an officer may be removed only for " ' some legal cause, to be ascertained and adjudged as matter of fact upon a hearing,' " we have said that " some latitude is allowed as to rules of evidence, methods of examination and the like, but no essential element of a fair trial can be dispensed with unless waived, and no vital safeguard violated without rendering the judgment of conviction subject to reversal upon review." (*Matter of Greenebaum v. Bingham*, 201 N. Y. 343.) The traditional yardstick which courts must apply may not prove a suitable instrument for unpracticed hands. Administrative boards, though acting in a quasi-judicial capacity, may employ a yardstick devised by the use of reason and fairness to meet their particular problems. In the review of their determinations, the courts must apply a similar measure.

Here the respondent was called upon to establish that the costs and expenses which he incurred in the proceedings before the Governor for the removal of the District Attorney of Orange county were " reasonable " within the meaning of section 240 of the County Law. If they were " reasonable " the statute made them a county charge, and the Supervisors were bound to audit the claim. True, in the proceedings before the Governor, the charges against the District Attorney were dismissed, but the Legislature has not in terms limited the applica-

tion of the statute to costs and expenses incurred in proceedings which result in the removal of a public officer. In *People ex rel. Benner* v. *Supervisors of Queens County* (39 Hun, 442) and *People ex rel. Smart* v. *Board of Supervisors* (66 App. Div. 66) the courts found indications in the history of the statutory provisions that the Legislature intended that unexpressed limitations should not be implied. In the present case no such question is really before us. The hearing was held under an order of mandamus to audit the claim. A board of supervisors may not be compelled by mandamus to audit claims which are not county charges. (*People ex rel. Mygatt* v. *Supervisors of Chenango County*, 11 N. Y. 563; *People ex rel. Vaughn* v. *Supervisors of Rensselaer County*, 52 Hun, 446; affd., 119 N. Y. 636.) Therefore, the order of mandamus to audit the charges is an adjudication that the respondent's expenses constitute a charge against the county, *if they were reasonable*. (See *Ashton* v. *City of Rochester*, 133 N. Y. 187; *Williamsburgh Savings Bank* v. *Town of Solon*, 136 N. Y. 465, at p. 477.)

At the opening of the hearing the Supervisors announced that they would " take testimony as to the reasonableness of the claims and as to the good faith of the claimant Hirschberg in bringing the proceedings." Doubtless the proceedings brought in 1919 for the removal of the District Attorney of the county had been discussed by the general public and the officials of the county. The claimant Hirschberg had himself been District Attorney of the county from 1916 to 1918. He had been a candidate for re-election in the autumn of 1918. The campaign was bitter. On the face of the returns the claimant Hirschberg was defeated by a small plurality. He charged fraud in the election and after his opponent had been inducted in office he made charges against his opponent before the Governor. All these matters were certainly known to the Supervisors even before they took any testimony. They heard the claimant in

support of his claim. Then they rejected it, holding in effect that the charges were brought without probable cause and in " bad faith."

It seems to us quite clear that the Supervisors might determine not only whether the charges incurred by the claimant in the proceeding to remove the District Attorney were reasonable in amount, but also whether the proceedings before the Governor were based upon sufficient cause to justify reasonably this claimant in incurring *any* costs and expenses. Where there is probable cause for believing a public officer guilty of misconduct, the public interest may require a proper presentation of charges, though at the hearing the officer is able to establish his innocence. The Legislature, recognizing this public interest, may provide that the reasonable costs and expenses incurred in the presentation of such charges in proceedings to remove a public officer shall be a county charge. Charges presented without probable cause, for a purpose other than the removal of a delinquent public officer, work harm not only to the officer but to the public. It would be unreasonable to construe the statute in a manner that would make the costs and expenses, incurred in such a proceeding by a malicious defamer of character, a public charge. The language of the statute does not require such construction. The Board of Supervisors were called upon to decide, after a fair hearing of the relevant and material evidence, whether this claimant brought proceedings against the District Attorney in good faith, for the purpose of securing his removal upon · charges which he had reasonable grounds to believe were true.

Here the claimant, defeated at the election for the office from which he sought to have his successful opponent removed, may have been actuated in bringing these proceedings by personal hostile feelings as well as by a desire to serve the public. Indeed, he admitted frankly in his testimony that his motives may have been mixed.

He may have hoped that if his opponent were removed, he would be appointed in his place. None the less, if he believed the charges he made were true, and if he had reasonable ground for his belief, the public interest might be served by a proper presentation of the charges of misconduct. An action for malicious prosecution cannot be sustained if there was probable cause for the criminal prosecution, although it was maliciously commenced. (*Besson* v. *Southard,* 10 N. Y. 236; *Thompson* v. *Lumley,* 1 Abbott's N. C. 254; affd., 64 N. Y. 631.) Neither criminal prosecutions nor proceedings to remove a public officer are ordinarily instituted by friends of the accused. Analogy points the way to the conclusion that the Legislature intended that the county should be charged with the reasonable costs and expenses of a citizen who institutes a proceeding for the removal of a public officer in all cases where such proceedings are brought in good faith in the belief, founded upon probable cause, that the officer is guilty and should be removed, though malice may have furnished the motive for bringing the proceedings.

Upon the present record there is no basis for any inference that, whatever motives may have caused the claimant to present charges to the Governor, he did not believe the charges to be true and did not in good faith seek to have the District Attorney removed. The return itself shows beyond question that the contrary finding of the Board of Supervisors is founded upon a misconception of the meaning of the term " good faith." That error might, however, be unimportant, if the finding of the Board that the proceedings were not based on probable cause can be sustained. We must examine the record to determine whether that finding is based upon sufficient evidence after a fair trial.

The record is too long and the facts are too complicated to permit an adequate statement and analysis of the facts within the reasonable limits of a judicial opinion. We refer only in barest outline to the facts shown by

this record. It appears that before the election the claimant as District Attorney employed at the public expense a detective agency from New York city to obtain evidence of election frauds. Probably he hoped to obtain such evidence against his political opponents. He received reports from the detectives that there was widespread fraud and criminal misconduct in the election. Many residents of the county, of standing and prominence, including two members of the Board of Supervisors, were implicated. He presented some of the evidence to the United States Attorney, and some of the accused were indicted by the Federal grand jury, though none were convicted. He made formal charges of criminal misconduct, before a magistrate, against those accused in the detectives' reports. Almost all waived examination and were held to answer the charges. Until this time the successful candidate was not implicated in the alleged frauds and misconduct in connection with the election, but he did appear as counsel for one of the accused before the magistrate. Then the detectives reported to the claimant as District Attorney that his successful opponent was endeavoring to induce prospective witnesses before the grand jury to withhold testimony. The claimant made a formal charge, before a magistrate, against the District Attorney-elect of attempted subornation of perjury. A hearing was held. The detectives testified against the accused. The accused presented testimony of several witnesses in contradiction. The magistrate thereupon discharged the accused, either because he did not believe the witnesses against the accused, or because he held that their testimony did not show that a crime had been committed.

· The claimant as District Attorney presented to the December grand jury the evidence against a number of the accused who had waived examination. The grand jury refused to find a true bill against any of them. The claimant then refrained from presenting to the

December grand jury the evidence against the others, though he had opportunity to do so. On December 31st, 1919, his term of office expired. He took with him some of the papers which should have remained in the public files. Perhaps they were necessary for the presentation to the Grand Jury of the charges not passed upon by the December grand jury. The January grand jury on January 3d, 1919, dismissed all charges not previously dismissed against the accused who had waived examination.

The claimant Hirschberg asked the Governor to order an investigation through the Attorney-General before a special grand jury of alleged misconduct of officers of Orange county. He was advised to present formal charges. He did so and the Governor appointed a commissioner to hear them. The appointment of the commissioner by the Governor, of course, constituted no adjudication that the charges were based on probable cause. Neither did the dismissal of the charges by the commissioner and the Governor constitute an adjudication that probable cause was lacking.

At the hearing before the Supervisors, now under review, the Supervisors received in evidence the entire record, including the testimony of witnesses and the opinion of the commissioner appointed by the Governor, upon the hearing held before him. They also received in evidence the records of the hearing before the magistrate upon the charge of attempted subornation of perjury made against Wilson, the successful candidate for District Attorney; also the record of a hearing before the Supervisors of a claim for payment for services rendered by the detective agency employed by the claimant Hirschberg as District Attorney. They based their finding of want of probable cause largely upon the testimony given at these hearings.

We find no reversible error in the admission of these records. True, the claimant was not bound either by the testimony produced, or the decision rendered, in pro-

ceedings to which he was not technically a party; but in all these proceedings he took an active part in the presentation of the case and from all the circumstances the inference might reasonably be drawn that if other relevant testimony had been available, it would have been produced at these hearings. If the testimony produced upon these hearings showed no probable cause for the claimant's charges of misconduct against the District Attorney, that fact would itself be significant. That fact might be explained or supplemented by other testimony. The claimant might show that testimony produced at these hearings was false or incomplete, but quite regardless of any technical rules of evidence, it cannot be said that the content of these records was without probative force and that the claimant could not be called upon to show, at least, that he had other relevant evidence which he did not produce upon these hearings. The error of the Board of Supervisors which cannot be overlooked is that it precluded the claimant from producing such evidence.

The charges the claimant made against the District Attorney were, in effect, that he wrongfully protected accused whom it was his duty to prosecute. Undoubtedly he did appear as counsel for one of the accused at the magistrate's hearing after his election as District Attorney. The commissioner who heard the charges held that this constituted merely an indiscretion which was not serious in itself. That may well be true, yet it is a circumstance which must be weighed in determining whether the claimant had probable cause for his charges to the Governor. All complaints against those accused of criminal misconduct which had not been presented to the grand jury before the new District Attorney took office were presented by him and dismissed by the January grand jury in the first few days of his term of office. Such speed may show a commendable zeal on the part of the new District Attorney, yet such speed is unusual. Fault may not be imputed to the new District Attorney

merely because he proceeded with unusual speed or because the grand jury failed to find a true bill against any of the accused. No inference of probable cause for the charges against the new District Attorney may be drawn from such facts alone. If probable cause nevertheless existed it must be shown by other evidence.

It is said that the refusal of the December grand jury to indict the accused against whom the claimant as District Attorney presented evidence and the failure thereafter of the claimant to present to the same grand jury the evidence in his possession against the other accused who had waived examination by the magistrate, indicate that there can be no basis for any charge against the new District Attorney that he did not honestly seek indictments against wrongdoers. It is further said that if the District Attorney failed to present to the January grand jury all the evidence that existed against the accused, the claimant himself is at fault because he did not hand over to his successor the evidence he had gathered.

Such circumstances are by no means conclusive upon the issue of lack of probable cause, if indeed they have, in this case, any probative force. It may be that the evidence presented to the December grand jury against some of the accused was so strong that its failure to indict may have justified the claimant in believing that it was not acting impartially or honestly, and that no other indictments should be sought from it. Perhaps the claimant had other information which justified his failure to present all his evidence to that jury. Upon such matters the record furnishes no light. Then, too, we are not informed as to the evidence which the new District Attorney presented to the jury or as to the steps which he took to obtain an indictment. If the new District Attorney was handicapped by the removal of some official papers by the claimant from the public files, then his haste in presenting to the grand jury an incom-

plete case against the accused on the third day of his term of office might well be regarded as, at least, unseemly.

The charges which the claimant made against his successor in office were, it must be conceded, not sustained by the evidence presented at the hearing before the commissioner. The commissioner might well hold that the clear preponderance of the evidence received by him lay with the accused. Neither the supervisors nor this court have any reason to doubt his innocence. No such issue is now presented. Not the truth of the charges, but the probable cause for bringing the proceedings against the accused, concerns us. The claimant in making the charges knew that he had evidence in his possession of criminal wrong against influential residents of the county; that one of the persons accused was represented by the District Attorney-elect; that others waived examination and that thereafter the grand jury refused to indict; and that all complaints which had not been passed upon by the December grand jury were submitted to and dismissed by the January grand jury within three days after the new District Attorney took office. What else the claimant knew about the action of the grand jury or the proceeding taken either by himself or his successor before the grand jury, he was not permitted to show, either at the hearing before the commissioner or at the hearing now under review.

The claimant was told by the Supervisors that he must show reasonable cause for his charges and his own good faith. Without testimony of what transpired in the grand jury room he could prove neither. Except, perhaps, as to the charge of attempted subornation of perjury, the record does not show that the charges were without probable cause or that the claimant did not in good faith believe them, unless inference to that effect may be drawn from the evidence that the grand jury refused to indict those accused of criminal wrong, and the Governor, upon the report of his commissioner, dismissed

the charges against the public prosecutor. The refusal of the Supervisors to take testimony as to the proceedings of the grand jury, in effect was a denial to the claimant of the right to prove the validity of his claim.

That refusal was based upon the ground that the secrecy of the proceedings of the grand jury must remain inviolate. Public policy has dictated that proceedings before the grand jury must be secret. There are sound reasons for the rule, but " where these reasons have ceased to operate, it is the better opinion, contrary perhaps to some cases, but maintained in most, that any revelations of the grand jury's doings which justice demands, may be made " (Bishop, New Crim. Proc. 857); Wigmore in his treatise on Evidence (§ 2362) states, after a critical examination of the relevant judicial decisions, that ". This is, in effect, the law as generally accepted to-day." Undoubtedly " The tendency of modern authorities has been to hold that when the reasons for secrecy no longer exist the ancient rules with reference thereto do not apply, and, in all cases where justice or the rights of the public require it, the facts should be disclosed." (State v. Campbell, 73 Kansas, 688. See, also, decisions collated in the opinion in that case and in notes to Wigmore on Evidence, §§ 2360–2363.)

Where a District Attorney is charged with official misconduct, the reasons for refusal to apply the rule of secrecy are peculiarly strong. " He cannot seek shelter behind that rule of secrecy to prevent inquiry into his malfeasance or misfeasance in office. When the reason for the rule of secrecy ceases, the rule itself becomes inoperative. Any other principle would permit a dishonest, corrupt and vicious district attorney to use the great power of his office and his influence with the grand jury as an engine of oppression and be entirely safe from inquiry under a seal of secrecy which would prevent investigation. That is not the law. That would be perversion and not enforcement of the rule." (Attorney-General v. Pelletier, 240 Mass. 264.)

In New York, as in most jurisdictions, the general rule is safeguarded by statutory prohibitions. (Code Crim. Pro. §§ 265, 266 and 952; Penal Law, §§ 1783 and 1784.) We are not in this case called upon to determine the circumstances under which the court may require production of the stenographer's minutes of the grand jury proceedings. We pass only upon the competency of the jurors as witnesses to proceedings of the grand jury.

The statute makes one express exception to the secrecy which the grand jury must maintain. (Code Crim. Pro. § 266.) The expression of one exception does not indicate that the general rule applies even when the reason for the rule fails. The statutes are partly declaratory of the rule previously applied by the courts. They should not be construed as intended to interfere with the established practice as to the limitation of the application of the rules. (*Murphy* v. *State*, 124 Wisconsin, 635; *Jenkins* v. *State*, 35 Florida, 737; *State* v. *Campbell, supra.*) For these reasons we hold that the Supervisors erred in refusing to take the testimony of the grand jurors. Without such testimony there was no basis for any determination of the question whether the proceedings to remove the new District Attorney were based upon probable cause.

We have not discussed the question of whether the Board of Supervisors erroneously rejected also other evidence which the claimant wished to present. Perhaps the offer of such testimony was too indefinite to raise any question of law. Certainly where the claimant can show that there is reasonable probability that any witnesses could give testimony supplementing or changing the testimony embodied in the records, which the supervisors received in evidence, such evidence should ordinarily be received. At the original hearing the question of the admission of such testimony may have been complicated by the possibility that some witnesses if compelled to testify might thereafter claim immunity from prosecution

for a crime. Lapse of time has removed that possibility. We do not now determine its effect at the time of the hearing under review.

We express no opinion about the merits of the claim of Mr. Hirschberg. We are constrained to reverse the determination of the Board of Supervisors because the Board has found that his charges to the Governor were made without probable cause and in bad faith, though the evidence does not affirmatively sustain the findings and the claimant was not permitted to prove his case. Rejection of a claim must be preceded by a fair opportunity to the claimant to prove its merits. In the eyes of the law there is no hearing unless such opportunity is afforded. Though technical legal rules of evidence and procedure may be disregarded by administrative boards, when they act in a quasi-judicial capacity, yet they must preserve the rights of those appearing before them to an adequate and fair hearing, and must act upon evidence which has some probative force. Our system of justice makes that an essential.

It is fair to say that the record does not in our opinion demonstrate that the Supervisors did not intend to act fairly towards this claimant. The ground for their rulings and decision appears in their own return. They misconceived the scope of the statute and the questions of fact upon which their decision must be based. The statute does not intend that a claimant may recover from the county his expenses in proceedings to remove a public officer where the claimant has brought the proceedings without probable cause, or without honest belief that the proceedings should result in the dismissal of a faithless public servant. Unless it appears that the claimant so acted in this case, his costs and expenses reasonably incurred are a county charge. The claimant is entitled to a fair and full hearing upon that issue, and his claim must be audited on the merits unless the evidence received justifies a finding against him.

The order of the Appellate Division should be reversed and the determination of the Board of Supervisors annulled, and a new hearing ordered, with costs in all courts.

CARDOZO, Ch. J., POUND, CRANE, KELLOGG, O'BRIEN and HUBBS, JJ., concur.

Order reversed, etc.