Donald H. Mead, J.
Herman T. Stichman, Special Commissioner of the 'State of New York and Special Assistant Attorney-General of the State of New York, in separate applications, moves for an order of this court granting to the State of New York an inspection of the minutes taken before the Grand Jury of the County of Onondaga which resulted in the indictments found herein against the above-named defendants, and also of the minutes taken before the said Grand Jury in an investigation relating to the management and operations of the Onondaga County Jail and the Onondaga County Penitentiary entitled “ The People of the State of New York v. John Doe ”, and directing the stenographer of said Grand Jury to deliver the transcripts of said minutes to the State of New York without payment of any stenographic or other fees, and for such other and further relief as to this court may seem just and proper.
Inasmuch as the motions are substantially identical they will be decided and treated as one in this memorandum. It is alleged in the affidavits of Herman T. Stichman, Esq., verified on the 11th day of October, 1962, in support of the motions, that the affiant is a Special Commissioner of the State of New York duly appointed by Governor Nelson A. Rockefeller under section 6 of the Executive Law to investigate the faithful execution of the laws and the relationship between corruption or misconduct and government, and to make recommendations for action to strengthen and improve practices and procedures relating to the faithful execution of the laws, with duties, powers and authorities as set forth in a copy of the Executive Order issued on September 8,1962, a copy of which is attached thereto as Exhibit A and made a part thereof. That he is also a Special Assistant Attorney-General of the State of New York, appointed by the *913 Attorney-General under section 63 (subd. 8) of the Executive Law on September 12, 1962. That subdivision provides in part that “ Whenever in his judgment the public interest requires it, the attorney-general may, with the approval of the governor, and when directed by the governor, shall, inquire into matters concerning the public peace, public safety and public justice.” That he has duly qualified under said appointments and has been and is now conducting the investigations with which he was charged by the Governor and the Attorney-General.
The affidavit is made in both capacities in support of the motions herein for an order granting the State of New York an inspection of the minutes of the Grand Jury which resulted in the indictments referred to herein and which relate in any manner to alleged misconduct by the public officials named therein and to the management and operations of the Onondaga County Jail and the Onondaga County Penitentiary.
Continuing, the moving affidavits thereupon briefly describe in substance the charges against the various defendants as contained in the several indictments hereinabove set forth in the respective motions. Attached to the affidavits, as Exhibit “ A ” thereof, is a copy of the Governor’s Executive Order made on September 8, 1962 in the following form:
STATE OF NEW YORK EXECUTIVE CHAMBER EXECUTIVE ORDER
By virtue of the authority vested in me by the Constitution and the laws of the State of New York, I, nelson a. rockefeller, Governor of the State of New York, do hereby constitute Herman t. stichman as a Special Commissioner to investigate the faithful execution of the laws and the relationship between corruption or misconduct and government, and to make recommendations for action to strengthen and improve practices and procedures relating to the faithful execution of the laws, with the following duties, powers and authorities:
I
To investigate generally the relationship between misconduct or corruption in office by public officials and the faithful execution of the laws by units of government in the State.
II
To extend assistance to and receive assistance from public officers engaged in or responsible for the detention of persons charged with or convicted of crime, or engaged in or responsible for the investigation or the prosecution of crime or misconduct in office by public officials.
Ill
To examine into the relationship between the government of the State and local law enforcement or regulation or administration, with particular reference but not limited to the following problems:
*914 1. The existing powers of the Governor, of State agencies and of other persons and bodies with respect to local public officers concerned with the detention of persons charged with or convicted of crime or concerned with law enforcement or regulation of administration.
2. The extent to which the power of the State government may or should properly be modified in connection with the detention of persons charged with or convicted of crime or in connection with local law enforcement or regulation or administration.
3. The necessity or desirability of amendatory legislation, and to report on all of the foregoing to the Governor.
IV
Pursuant to the provisions of subdivision 8 of section 63 of the Executive Law, the Attorney-General of the State is hereby directed to inquire into the matters hereinabove set forth involving the public peace, public safety and public justice and is requested to do so by appointing the Special Commissioner as a Special Assistant Attorney-General and such counsel, deputies, officers and other persons as the Special Commissioner may require to accomplish the purpose of this Order and to fix their compensation.
V
The Special Commissioner hereby established and the Attorney General, in cooperation with the Special Commissioner, are hereby authorized and directed to exercise, for the accomplishment of the purposes of this order, all powers and authorities set forth in subdivision 8 of section 63 of the Executive Law, and are hereby authorized by me to exercise any power to administer oaths and examine witnesses under oath, to subpoena any person, books, papers or records which I may have or have the power to delegate by virtue of any of the provisions of the Executive Law.
VI
Every department, division, board, bureau and agency of the State shall provide to the Attorney-General and to the Special Commissioner every assistance, facility and cooperation which may be necessary or desirable for the accomplishment of the duties or purposes of the Attorney-General and the special commissioner under this order.
The Mayors or other chief executive officers of cities, the district attorneys of the counties, the sheriffs of the counties, and the commissioners or chiefs of police or persons having comparable titles or duties exercising supervision of police forces within the State are called upon to cooperate and make available every facility and assistance to the Attorney-General and the special commissioner in the performance of their duties under this order.
given under my hand and the Privy Seal of the State at the Capitol in the City of Albany this eighth day of September (L. S.) in the year of our Lord one thousand nine hundred and sixty-two.
bt the governor: /s/ Nelson A. Rockefeller /s/ William J. Ronati
Secretary to the Governor.
[Published in 9 N Y C R R 1.11.]
None of the aforesaid allegations as contained in the several affidavits in support of the motions have been denied, controverted or contradicted in any manner in the People’s affidavit filed by the District Attorney in opposition to the motions.
*915 It is the contention of the Special Commissioner and Special Assistant Attorney-General that the Executive Order issued by the Governor on September 8, 1962 is directly concerned with the alleged acts of omission and commission which are the subject of the indictments herein and that said alleged acts of omission or commission also fall directly within the scope of his appointment by the Attorney-General under section 63 (subd. 8) of the Executive Law since they relate to the public peace, public safety and public justice. He further contends upon the applications that it is essential to the investigation which he is conducting that he be apprised of all the sworn testimony with respect to the alleged criminal acts of commission or omission of, or misconduct by, public officials named in the indictments relating to the management and operations of the Onondaga County Jail and Onondaga Comity Penitentiary and with respect to an investigation by the District Attorney of Onondaga County entitled “ The People of the State of New York v. John Doe ”, conducted before the Grand Jury which found said indictments concerning the aforesaid matters. That it is apparent the investigation of the said Grand Jury was directly concerned with inquiring into the matters which the Governor and the Attorney-General have charged him with investigating. That his obtaining the Grand Jury minutes is essential in that it would, for instance, constitute the most effective means of ascertaining facts constituting the foundation of the charges concerning alleged unfaithful execution of the laws by the public officials indicted, the management and operations of the Onondaga County Jail and the Onondaga County Penitentiary, and the relationship between misconduct or corruption in office, if it exists, and the faithful execution of the laws by units of government in the State. Further, by way of example, it would provide valuable aid in his examination into the relationship between the government of the State and local law enforcement, regulation and administration, with reference to the existing powers of the Governor and of State agencies, including the State Department of Correction with respect to local public officers concerned with the detention of persons charged with or convicted of crime. That it would enable him to proceed more expeditiously in the investigation ordered by the Governor and in carrying out his other assigned duties, including reporting to the Governor with respect to the necessity or desirability of amendatory legislation, all as referred to in the Executive Order. That it would seem preferable, from the viewpoint of efficiency as well as otherwise, that he be given access to such minutes rather than that he be compelled to re-examine all the Grand Jury witnesses.
*916 It should he mentioned that all of the attorneys for the respective defendants named in the aforesaid [13] indictments have executed and filed with the court a stipulation in writing in which they consent to the granting of the motions herein.
The District Attorney, in opposing the motions, contends that the testimony presented to the May 1962 Grand Jury in the investigation entitled “ The People of the State of New York v. John Doe ”, an investigation relating to the management and operations of the Onondaga County Jail and Onondaga County Penitentiary, involves the rights of parties other than those named in the aforesaid indictments; that persons other than the defendants named in the aforesaid indictments have been indicted as a result of said Grand Jury investigation and that some or all of said indictments have not yet been disposed of; that to permit the requested inspection of the Grand Jury minutes would result in a serious impairment of the rights of such other defendants.
The Grand Jury minutes referred to in the notices of motion are the minutes taken before the May 1962 Grand Jury in and for the County of Onondaga in an investigation entitled “ The People of the State of New York v. John Doe ”, an investigation relating to the management and operation of the Onondaga County Jail and Onondaga County Penitentiary. Prior to its discharge on August 31,1962, the May 1962 Grand Jury, among others, returned the indictments herein set forth which, generally speaking charged the Sheriff of the County of Onondaga and several of his deputies, as well as the Commissioner of Corrections of the County of Onondaga and several of his subordinates, with violations of the Penal Law in that they allegedly (1) permitted minors to be placed in the same room with adult prisoners, or (2) failed to segregate minors from adults and that as to certain defendants, they (3) commingled an accused minor being investigated to determine his eligibility as a youthful offender with an adult which alleged violations resulted in acts of sodomy or attempted sodomy.
During the course of said Grand Jury investigation, the District Attorney of Onondaga County made several requests to the Governor to order an investigation of the Onondaga County Jail and Penitentiary and on at least one occasion requested the Governor to direct that the operation of said county jail and penitentiary be taken over by the New York State Police. Following the return of the indictments herein the Onondaga County executive requested that the Governor direct a representative to inquire into and make a full report to the Governor *917 on the circumstances Avhich resulted in the indictment so that the Governor may take such action as he feels is Avarranted,
It is apparent that the appointment of Mr. Stichman as a Special Commissioner and Special Assistant Attorney-General was a direct result of those requests. Contemporaneously with the appointment of the Special Commissioner the Governor stated publicly: ‘1 In vícav of the requests of the Onondaga
County District Attorney and the Onondaga County Executive, Special Commissioner Stichman’s immediate assignment will be to conduct a thorough and careful investigation into the serious charges and countercharges of alleged misconduct on the part of certain Onondaga County law enforcement officials. To facilitate a speedy investigation, I would expect the Onondaga County District Attorney to move with extraordinary expedition toward trial of the indictments recently returned by the Onondaga County Grand Jury.” The indictments to which the Governor referred are those with respect to Avhich the motions herein are made. It is more than obvious then, that one of the objectives of the Governor’s Executive Order Avas the ordering of an investigation of the relationship between alleged misconduct or corruption in office on the part of public officials in Onondaga County and the faithful execution of the laws by units of government in the State. There can be no doubt that the May 1962 Grand Jury explored this area as evidenced by the indictments returned against the several public officials named as defendants therein. Therefore, unless there are serious legal objections to the granting of the motions it would appear that an inspection of the Grand Jury minutes would further the public interest and be in keeping Avith the mandate expressed in the Governor’s Executive Order in that it would facilitate and expedite the inquiry into matters concerning the public peace, public safety and public justice.
The constitutional authority of the Governor and the Attorney-General to order such an investigation, and for that purpose to appoint a Special Commissioner and Special Assistant Attorney-General under article IV (§ 3) of the New York State Constitution and section 63 (subd. 8) of the Executive Law, has been clearly established (Matter of Di Brizzi, 303 N. Y. 206).
The minutes of the Grand Jury are not part of the indictment. Indeed, at common law, no Avritten record of the proceedings before a Grand Jury was kept (People ex rel. Hirschberg v. Supreme Court, 269 N. Y. 392, 394). The statute now provides that£ ‘ The grand jury must appoint one of their number as clerk, who is to preserve minutes of their proceedings * * * and of the evidence given before them” (Code Crim. Pro., § 243).
*918 The District Attorney of any county may appoint a stenographer to take the testimony given before the Grand Jury (Code Crim. Pro., § 952-p), and it is the duty of such stenographer “ to furnish to the district attorney of such county a full copy of all such testimony as such district attorney shall require, but he shall not permit any other person to take a copy of the same, nor of any portion thereof, nor to read the same, or any portion thereof, except upon the written order of the court duly made after hearing the said district attorney. * * * all of the said original notes and minutes shall be kept in custody of said district attorney, and neither the same, nor a copy of the same, or any portion of the same, shall be taken from the oEce of the said district attorney, excepting as above provided.” (Code Crim. Pro., § 952-t; emphasis supplied.) Under these statutory provisions the minutes of the Grand Jury and the testimony of the witnesses are now available to the court, to the District Attorney, and, upon direction of the court, to other persons.
All motions under section 952-t of the Code of Criminal Procedure are addressed to the discretion of the court (Mann v. Delaware, L. & W. R. R. Co., 99 Misc. 358, 360; Matter of Martin, 170 Misc. 919, 922).
In Matter of Crain (139 Misc. 799) the court, in granting a motion to inspect the Grand Jury minutes made by Hon. Samuel Seabuby, Commissioner appointed by the Governor to conduct an investigation against Hon. Thomas C. T. Cbaih, District Attorney of the County of New York, wrote as follows:
“ The district attorney opposes the granting of the order sought, stating: ‘ I know of no legal authority for the making by this court of any order such as is here sought and respectfully submit that according to the established law, this court has no jurisdiction to entertain or grant this application.’
“ Section 952-t of the Code of Criminal Procedure forbids the stenographers of the grand jury to furnish a copy of any of the proceedings before the grand jury ‘ except upon the written order of the court duly made after hearing the said district attorney.’ The purposes of these restrictions are obvious. The granting of an order for the inspection of the grand jury minutes, however, is left entirely to the conscience and sound discretion of the court. It has been held, and properly held, that such discretion should not be exercised to furnish the minutes to parties for their aid in private litigation.
“ The application before me, however, although not involved in a criminal action, yet involves public interests in the broadest measure. The application is made by the Governor’s Commissioner for necessary use in investigating the conduct of a public *919 officer of great importance and it is obvious to me that not only would sound discretion warrant the granting of the order in such a case but that a refusal to grant it would be an abuse of discretion and injurious to public intersts. ’ ’
In Matter of Quinn (293 N. Y. 787), an appeal was taken from an order of the Appellate Division which unanimously reversed an order of the Westchester County Court denying a motion by respondents for an inspection of the Grand Jury minutes and granted such motion. Following the indictment of a former Town Receiver of Taxes for misappropriation of town funds the Grand Jury reported that appellant, his successor in office, while not chargeable with any criminal act, had been negligent in failing to acquire knowledge of the facts and prevent the misappropriations. Respondents, residents of the town, then brought a proceeding under section 36 of the Public Officers Law to compel his removal from office. They then brought this proceeding in the County Court for an order permitting the inspection of that portion of the Grand Jury minutes containing the testimony of the appellant. The County Court held that the matter was not one of discretion and that it was wholly without jurisdiction to grant the application. The Appellate Division, in reversing the orders of the County Court, and granting the application, held that said court 1 ‘ had the power to grant the application and that under the circumstances in this case the motion should have been granted as a matter of discretion.” The respondents contended in the Court of Appeals that by section 952-t of the Code of Criminal Procedure the Legislature plainly left the propriety of the order for the inspection of the Grand Jury minutes in any particular case to the discretion of the courts without restrictions of any nature. The order granting the inspection was affirmed by the Court of Appeals without opinion.
In Matter of People ex rel. Sawpit Gymnasium (60 N. Y. S. 2d 593), the Village of Portchester moved for an inspection of the Grand Jury minutes following a presentment handed down by the Grand Jury in which it criticized the Police Department for laxity in failing to discover and abate gambling activities within the village. In an effort to adopt corrective measures and to prevent a recurrence of the conditions found by the Grand Jury, the Village moved for an order permitting an inspection of the Grand Jury minutes. In granting the motion, the court stated: “ The cloak of secrecy surrounding the proceedings of a Grand Jury has always been preserved and protected by the courts, with few exceptions. Such a policy is founded upon the principle that the true and proper administration [of] justice is *920 dependent upon the voluntary appearance of witnesses before the Grand Jury, without fear of recrimination, publicity or accountability: There is, however, ample authority for an inspection of the minutes of the Grand Jury by a person, other than a defendant, when the purpose of the inspection is to facilitate and make efficient the administration of justice. Matter of Bar Ass’n of Erie County (Hagerty), 182 Misc. 529, 533 * * *. Such an inspection is permitted when the application is made by a law enforcement agency and in the public interest. Dworetzky v. Monticello Smoked Fish Co., 256 App. Div. 772, 774 * * *. In the public interest, the discretionary power of the court is exercised in favor of granting the application. Matter of Quinn, 293 N. Y. 787”.
In Matter of Attorney General of United States (160 Misc. 533), an application was made by the Attorney General of the United States for an inspection of the minutes of the Kings County Grand Jury which investigated certain matters in relation to the affairs of the National Title Guaranty Company. No indictments were found, but a lengthy presentment was made in which the operations of the company were reviewed in considerable detail. The company and eight individuals were indicted by the Federal Grand Jury for the Eastern District of New York, and were awaiting trial. The court, in granting the applications, said:
“ Reasons which might well preclude an examination of such minutes by private individuals may well be abortive when raised against an inspection by public officials to enable them more efficiently to discharge the obligations of their office.
“ No private interest is here sought to be served. The information is not desired to aid a private litigant. The grounds herein set forth for keeping inviolate the proceedings mentioned do not exist. The purpose of the inspection is to facilitate and make efficient the administration of justice by the Federal government.
“ In the proper exercise of a sound discretion the power inherent in the court to grant the application should be exercised.”
In Matter of Scro (200 Misc. 688) an application was made by police officers for an order vacating an order of the court directing the District Attorney to transmit to the Police Commissioner of the City of New York a transcript of the Grand Jury testimony of Harry Gross, or, in the alternative, limiting the use of such minutes. Upon the trial of the indictment against the former and current members of the Police Department, Gross refused to testify and the indictment was dismissed. The Police Commissioner then instituted disciplinary proceedings against *921 the officers and an application of the District Attorney for an order pursuant to section 952-t of the Code of Criminal Procedure permitting him to release Gross’ Grand Jury testimony to the Police Commissioner for disciplinary action was granted. In denying the motion for vacating of the prior order, the court said: “ This court is of the firm opinion that the interests of justice demanded that Gross’s refusal to testify should not grant absolution to alleged miscreant police officers. If they were guilty of the reprehensible conduct attributed to them, namely, of accepting graft in return for protecting Gross in his illegal business, their continued retention on the police force would have made law enforcement a mockery. Public interest, therefore, required that this testimony be made available to the police commissioner, to be used by him within limits prescribed by law. (People ex rel. Hirschberg v. Board of Supervisors, Orange Co., 251 N. Y. 156, 170; Dworetzky v. Monticello Smoked Fish Co., 256 App. Div. 772, 774; Matter of Quinn [Guion], 267 App. Div. 913, affd. 293 N. Y. 787.) ”
The cases submitted by the District Attorney in opposition to the motions are clearly distinguishable from the applications before this court. In Matter of Martin (170 Misc. 919), an indicted County Judge moved for an order permitting him to inspect the minutes of another Grand Jury which had indicted a certain defendant for the crime of abortion. The County Judge had been later indicted for taking a bribe from said indicted defendant upon his promise to dismiss the indictment against the latter. In denying the motion, the court pointed out that the applicant there sought permission to inspect Grand Jury minutes with respect to an indictment in which he was not named as a party defendant. In doing so, however, the court stated: “ It is not difficult to understand how a commissioner of the Governor appointed to investigate crime, the police commissioner of the city of New York, and the United States Attorney-General, the petitioners in the cases above cited, in special instances might be effectively aided by an inspection of grand jury minutes in their respective duties as law enforcement officials.”
In Matter of Bar Assn, of Erie County (182 Misc. 529), Wakd, J., held that the Bar Association of Erie County was not a proper party to make an application for the inspection of Grand Jury minutes and pointed out that the petitioner did not claim that it was a duly organized and existing law enforcement agency. Nor does it claim that it is expressly endowed with the powers common to such an agency. However, the court made it clear that proper persons to make such application would include duly elected or appointed law enforcement bodies, or officers, and *922 he cited as examples the Attorney General of the United .States, a Commissioner appointed by the Governor of the State of New York and the Commissioner of Police of New York City. As the court in that case stated at page 533: “ Other persons, in the discretion of the court, may inspect the minutes of the grand jury when the purpose of the inspection is to facilitate and make efficient the administration of justice.”
In Matter of Third December 1959 Grand Jury (20 Misc 2d 475), the court can see no precedent for the contention of the District Attorney in the case cited. In that case the Grand Jury, while it had returned an indictment against Borough President Huían Jack, was still in session and concerned with the investigation of another alleged conspirator.' Even so, in the case cited, the court, in denying the application to inspect the Grand Jury minutes, did so without prejudice to a renewal if the circumstances should justify it. The court in that case further stated that the transmittal of the minutes for the purposes of possible removal proceedings would inevitably carry with it an implication of defendant’s guilt and subject him to further adverse publicity that would affect his right to a fair trial. The court thereupon proceeded to point out that the Borough President had suspended himself from active duty and simultaneously with his own removal, had voluntarily relinquished the emolument of his office pending the outcome of the prosecution.
In Matter of King (18 Misc 2d 881) an application to inspect the Grand Jury minutes was denied without prejudice to the right of the petitioner to renew such application upon a petition in which there would be set forth adequate and sufficient facts which would permit the court to determine whether it should exercise its discretion and permit an examination of such records. In the case at bar it has been made abundantly clear that the investigation undertaken by Commissioner Stichman pursuant to the mandate contained in the Governor’s Executive Order would be greatly facilitated by an inspection of the Grand Jury minutes and would be in furtherance of the public interest. In People v. Pankow (17 Misc 2d 143) the court denied a motion made by the Corporation Counsel of the City of Buffalo to inspect certain Grand Jury minutes inasmuch as the stated purpose of the motion was to afford information for the contemplation and possible institution of civil actions.
The work of the May 1962 Grand Jury has been completed. There can be no interference with its work, since it is no longer in existence, having been discharged on August 31, 1962. The grounds advanced by the District Attorney for keeping inviolate the proceedings of the Grand Jury, impressive though they may *923 be, are outweighed by the public interest involved in the furtherance of the administration of justice, and in the facilitation of the investigation ordered by the Governor and the Attorney-General. For the reasons stated, the petitioner’s motions are granted.
The petitioner requests that the minutes be furnished without the payment of any stenographic or other fees. However, no legal authority for that request has been furnished by petitioner nor can the court find any which would support the same. The court’s attention has been called to section 302 of the Judiciary Law, but in his opinion that section has no application to the request herein being made by petitioner (cf. Code Crim. Pro., § 952-v).
The petitioner’s motions are granted and an order should be submitted requiring the stenographer, upon payment of his proper fees, to furnish a transcript of the minutes of the May 1962 Grand Jury to petitioner.